KIRK v. KIRK.

4-9502                                    239 S. W. 2d 6

Opinion delivered May 7, 1951.

*O. E. Williams,* for appellant.

*Wood & Smith,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Hugh A. Kirk, was granted a divorce from appellant, Mary Jane Kirk, on the ground of three years separation without cohabitation. The principal issue on this appeal is the sufficiency of the evidence to support the chancellor's finding that appellee was a *bona fide* resident of Arkansas for the statutory period.

The parties were married in 1941 and lived in San Francisco, California, where appellee was employed as a patent attorney for the Shell Development Company until 1945 when they moved to New York where appellee was self-employed as a patent attorney for about a year. In July, 1946, appellee was sent to Antwerp, Belgium, by his employer, the International Telephone & Telegraph Company. In December, 1946, appellant went to Antwerp where the parties resided until May 10, 1947, when she left appellee after they had executed a separation agreement and property settlement. Appellant returned to California where she instituted a suit for divorce on December 29, 1947. Before service by publication against appellee was completed in the California action, appellant went to Washington, D. C., where she has since resided and is employed in patent drafting.

Appellee remained in Belgium where he engaged in private practice as a patent attorney during 1948 and 1949. He returned to this country early in 1950 and came to Arkansas in February, 1950. On June 16, 1950, he instituted the instant suit for divorce. After filing a petition for alimony *pendente lite,* suit money and attorney's fee, appellant filed an answer alleging that appellee was not a *bona fide* resident of this state and praying dismissal of the complaint for want of jurisdiction.

At the trial on November 1, 1950, appellee testified that he returned to this country because of the dangerous international situation and a decline in his practice as a patent attorney; that upon investigation he found that Arkansas was one of three states without a patent attorney; that he came here for the purpose of opening an office as patent attorney, but was without sufficient funds to do so. He obtained a room at the YMCA in Little Rock on February 23, 1950, and subsequently made formal application to three companies for a position as patent attorney and registered with several employment agencies. On April 26, 1950, he secured a job as clerk in the Washington Hotel at Fayetteville, Arkansas, where he moved and was still employed at the time of the trial at a salary of $100 per month and room and board.

Appellee testified that while he was primarily interested in securing employment in patent work, he accepted the hotel job until such work became available; that he intended to remain in Arkansas permanently and had applied for a position at the University at Fayetteville. He stoutly denied any intention of returning to Belgium or establishing a residence elsewhere than in Arkansas. He removed all his personal effects except a few books from Antwerp to Fayetteville. Although he was still registered as a patent attorney in Antwerp, he did not maintain an office there, but a friend permitted him to use his address in the Tower Building in Antwerp for registration purposes. He stated that he had accepted no new business from Belgium clients since leaving that country and was still working on a few cases that had not been completed when he left.

An executive of an insurance agency, the head of an employment agency and the secretary of the YMCA in Little Rock, Arkansas, corroborated appellee's testimony as to his residence in Little Rock, his attempts to secure interim employment, and his efforts to secure a position as patent attorney. Appellee joined and attended with regularity a Sunday School class while in Little Rock. He still had a California driver's license which he kept for identification purposes and had not owned a car since he left California in 1945.

The deposition of appellant contains much in the way of opinion, argument and hearsay which was objected to at the trial. It is undisputed that appellee has actually resided in Arkansas continuously since February 22, 1950. However, appellant earnestly insists that the facts and circumstances are insufficient to show an intention on his part to remain in Arkansas permanently. It is argued that appellee's claim that he was forced to take interim employment as a hotel clerk at a small salary is ridiculous in view of his educational background, professional qualifications and the fact that his father is a successful patent attorney in Ohio. In this connection appellee testified that he and his father had been incompatible since 1936 and appellant, to some extent, corroborated his testimony in this regard by stating that since their marriage his parents had done everything in their power to disrupt the union. Throughout his testimony appellee denied that he has either sought or received financial assistance from his father or that he had any source of income other than his salary as hotel clerk.

In urging that appellee was not a *bona fide* resident of Arkansas for the statutory period appellant relies on *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, and several subsequent cases where we held that it was encumbent on the plaintiff to establish domicile as a jurisdictional prerequisite in a divorce action. It is also insisted that corroboration of appellee's testimony as to residence is lacking. We have held that proof of residence must be corroborated the same as any other essential fact. *O'Keefe* v. *O'Keefe,* 209 Ark. 837, 192 S. W. 2d 556. The purpose of the rule requiring corroboration

is to prevent the procuring of divorces through collusion, and where it is plain there is no collusion, the corroboration may be comparatively slight. *Morgan* v. *Morgan,* 202 Ark. 76, 148 S. W. 2d 1078; *Goodlett* v. *Goodlett,* 206 Ark. 1048, 178 S. W. 2d 666.

In the Morgan case we approved the following statement of the general rule in 17 Am. Jur., Divorce and Separation, § 386: "It is not necessary that the testimony of the complaining spouse be corroborated upon every element or essential of his or her divorce. It has been said that since the object of the requirement as to corroboration is to prevent collusion, where the whole case precludes any possibility of collusion, the corroboration only needs to be very slight.

"If an essential fact is difficult of proof, corroboration may be sufficient though weak."

A difficult question always arises when one of the essential elements to a divorce is mental in its nature, such as the intent to remain permanently in a certain place. While statements made by the parties may be considered, it is also true that their actions speak louder than words. Here we have more than the bare assertion by appellee that he intends to remain in Arkansas and pursue his profession as a patent attorney. There is some corroboration of his statements manifested by overt acts which tend to support his declaration of intention. It is clear that there is no collusion in the instant case. While the corroborative evidence is not as strong as it might be, we cannot say the chancellor's finding of *bona fide* residence for the statutory period is against the preponderance of the evidence.

Appellant also insists that if the case is affirmed on the jurisdictional question, she is entitled to a decree for alimony. Under the separation agreement and property settlement of May 9, 1947, appellee agreed to pay appellant $200 per month support money during his life or until appellant's remarriage in the event of a divorce by either party. Appellee defaulted in these monthly payments. When the chancellor offered to enforce this agreement, counsel for appellant stated that he did not want

the matters involved in the property settlement litigated, apparently on the theory and under a misapprehension that appellant might thereby enter her appearance for all purposes and waive her right to object to jurisdiction. Consequently the issue of permanent alimony was not determined by the chancellor. We have held that even though a plaintiff husband was not a resident of Arkansas, the chancery court, nevertheless, has jurisdiction for the purpose of granting the wife maintenance or alimony. *Kennedy* v. *Kennedy*, 205 Ark. 650, 169 S. W. 2d 876; *McDougal* v. *McDougal*, 205 Ark. 945, 171 S. W. 2d 942; *Mohr* v. *Mohr*, 206 Ark. 1094, 178 S. W. 2d 502.

We try the case *de novo* and have concluded that under all the facts and circumstances appellee should be required to pay appellant alimony in the sum of $30 per month. This modification of the decree shall not prejudice appellant's right to enforce the property settlement of May 9, 1947, and, in such event, appellee will be given credit on said property settlement to the extent of the payments made by him of said $30 per month alimony. Appellee is also directed to pay $100 for appellant's attorney's fee in addition to the amounts heretofore allowed. With these modifications, the decree is affirmed. The cause will accordingly be remanded with directions to enter a decree consistent with the modifications indicated.

GRIFFIN SMITH, Chief Justice, not participating.