ANDERSON *v.* ANDERSON.

5-2426                                    352 S. W. 2d 369

Opinion delivered December 18, 1961.

[Rehearing denied January 22, 1962.]

*Pickens, Pickens & Boyce,* for appellant.

*D. Leonard Lingo* and *Harry L. Ponder,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a Chancery decree granting appellee, Wesley Anderson, a divorce from appellant, Leona Anderson, and adjudicating property rights between the parties.

Appellee sought the divorce upon the grounds of general indignities and alleged, *inter alia,* that he and appellant had settled their property rights.

Appellant denied that appellee had grounds for divorce, denied any property settlement and cross-complained seeking a decree for separate maintenance and support; a property division and settlement between the parties; decree of sale of all properties owned by the parties as tenants by the entirety, with proceeds to be divided equally; and a sum as permanent alimony, attorney's fee, suit money, and cost.

From a decree which was adverse in part to appellant's prayer comes this appeal.

Aside from a contention that the division of property decreed by the court is inequitable and that the court abused its discretion in failing to grant alimony and attorney's fee, appellant's principal contention is that there was no corroboration of appellee's testimony which would entitle him to the relief granted by the Chancellor.

As to corroboration, the Chancellor in his findings said:

"I find here a picture that, to me, is highly regrettable. I might say that in making my finding on the petition for divorce, the question of corroboration arises; it has been questioned severely. The corroboration, as I have seen it, has come as much at least, if not more, from the testimony of the defendant herself as from those witnesses introduced by the plaintiff."

In argument here, appellant calls to our attention the provisions of § 34-1207, Ark. Stats. Ann. which reads as follows:

"The statements of the complaint for a divorce shall not be taken as true because of the defendant's failure to answer, or his or her admission of their truth."

Of course, it is a rigid rule of continuous application in this State that in an action for divorce a decree will not be granted upon the uncorroborated testimony of one of the parties. *Smith* v. *Smith,* 215 Ark. 839, 233 S. W. 2d 776. But the purpose of the rule requiring corroboration is to prevent the procuring of divorces through collusion, and when it is plain that there is no collusion, the corroboration may be comparatively slight. *Kirk* v. *Kirk,* 218 Ark. 880, 239 S. W. 2d 6.

This was a hotly contested divorce suit with no intimation of collusion. In our view it clearly falls within the following rule which was aptly stated in *Morgan* v. *Morgan,* 202 Ark. 76, 148 S. W. 2d 1078, as follows:

"It is not necessary that the testimony of the complaining spouse be corroborated upon every element or essential of his or her divorce. It has been said that since the object of the requirement as to corroboration is to prevent collusion, where the whole case precludes any possibility of collusion, the corroboration only needs to be very slight."

The record in the present case is voluminous. It would serve no useful purpose to here set forth the minute details of appellant's contemptuous conduct toward appellee which took place over a period of years. There was evidence to the effect that such conduct resulted in the absence of cohabitation as husband and wife for a period of some three years prior to the commencement of this action even though the parties continued to inhabit the same home. Appellee was relegated to sleeping on the back porch of their home and was found one night sleeping on a counter in his place of business. On one occasion appellee was stricken with a serious kidney ailment. When it appeared that he might die, it is impressive that appellant took the occasion to ask appellee to forgive her for the way she had treated him.

Appellee was a building contractor and had built up a substantial business known as Anderson Lumber Company. Appellant performed some limited duties for the business but to the employees, behind appellee's back, she was known as the "big boss" due to her dictatorial attitude. Appellant would publicly criticize appellee and would correct him in front of customers. One witness testified that after two of appellee's construction jobs had been turned down by plumbing inspectors, he heard appellant tell her husband that if he had done the jobs right he would have gotten his money out of them and then almost immediately told appellee to get out of his own place of business and stay out. This witness said: "I saw there was trouble coming up and I got out and stayed out myself." So did appellee. Another witness testified that on several occasions he noticed appellant use short, cut off sentences and catty remarks to appellee. Another witness noticed how worked up appellant would get when she began to talk about her troubles with her husband and what she was going to do to him. The record is replete with instances such as here set out, each perhaps small within itself but together produced cumulative results which caused the Chancellor to find that they constituted such indignities to the person of appellee as to render his condition intolerable.

As was said in *Coffee* v. *Coffee,* 223 Ark. 607, 267 S. W. 2d 499:

"The Chancellor and the parties reside in the same community and he had the advantage of seeing and hearing the witnesses testify and was in a preferred position to determine the credibility of the witnesses and the weight to be accorded this testimony.

"We have also held that while Chancery cases are tried *de novo,* the established rule of practice is that his findings are of such persuasive force upon evenly balanced testimony that the decree will not be reversed."

And in *Koury* v. *Koury,* 230 Ark. 536, 323 S. W. 2d 554:

"The very nature of the ill treatment inflicted upon Mrs. Koury was such that there could not be much corroboration, and in a case of this kind where there is no collusion her testimony does not need much corroboration."

Applying these rules here there was more than sufficient evidence to support the Chancellor's finding. Therefore, the decree of divorce is affirmed.

Further applying the above rules we find after a careful examination of the record that the Chancellor's adjudication of the property rights of the parties was not only fair but under the circumstances extremely just and equitable. Appellant's total assets following the trial court's adjudication are substantial. From the record it is clear that she is a fairly young woman. There is no contention that she is in ill health. She is remarkably shrewd in business dealings, having been engaged in successful financial transactions for many years. She possesses great ability and appears to be financially independent. From the standpoint of ready money and liquid assets she seems to be in a superior position to appellee. From what has been said, it follows that since the matter of alimony and attorney's fees fall within the sound discretion of the trial court, we are unable to find abuse of discretion. Therefore, on the whole case the decree is affirmed.