MAURICE G. MORLAN *v.* MILDRED C. MORLAN

73-203                                                502 S.W. 2d 628

Opinion delivered December 24, 1973

*Denver L. Thornton,* for appellant.

*James J. Calloway,* for appellee.

LYLE BROWN, Justice. Appellant's petition for a divorce was denied. We affirm because the appellant failed to meet the requirement of corroboration.

The parties were intermarried in 1954 and lived together until March 11, 1972. For several years prior to the separation they lived in Memphis where appellee still resides. At the time of separation appellant moved to El Dorado. The divorce petition alleged general indignities.

Appellee denied the allegation and alleged in substance that the separation resulted from appellant having an affair with a woman in El Dorado. In addition to denying appellant's prayer for divorce the court awarded custody of the minor child to appellee; ordered appellant to pay $300 per month for support of the wife and minor child; and gave possession of household furnishings and an automobile to appellee. The latter did not ask for a divorce.

Appellant testified at length relating that appellee was in the habit of drinking, committing acts of hysteria, consistently spending money beyond their income, embarrasing appellant, and committing acts of violence toward appellant. He denied having an affair with another woman but in oral argument the incident was admitted.

In the absence of collusion in a contested divorce comparatively slight evidence of corroboration is sufficient. *Anderson* v. *Anderson,* 234 Ark. 379, 352 S.W. 2d 369 (1961). Witness R. A. Chapel resides in El Dorado and has business dealings with appellant. The witness testified that in February 1972 he received a telephone call from appellee trying to locate appellant; that "she got kind of loud" and wanted to know if the witness knew a woman named Bobbie; that appellee used some profane language and said "This is some more that is going to pay for this". Mrs. Chapel was called as a witness. She testified that when appellant moved to El Dorado he had a black eye; that she inquired of the cause and appellant attributed it to an accident. Appellee was called as a hostile witness. She said the parties scuffled on the evening of March 11, 1972, the date of the separation; that in the same encounter she threw a glass at appellant and in the same confrontation she tore his shirt. She said she was incensed because of "the other woman" and by having learned that appellant had lied about his whereabouts on a previous night which was spent away from home. Summarizing, appellant's corroboration related to a telephone call inquiring about another woman; a black eye which appellant attributed to an accident; and a physical encounter with appellee on March 11. Appellant refers us to the testimony of several witnesses called by appellee and urges that their testimony corroborates appellant's testimony. Sharon Cook said she heard the couple argue

about bills which the witness did not consider uncommon among married couples. Dorene Dundas said she had heard the Morlans fuss about appellant not spending more time with his young son. Charlene Ulander said she had heard appellee use abusive language towards appellant. Mark Morlan, the seventeen year old son of the parties, said he "got between" the couple one night when they were arguing. None of those witnesses related how often they witnessed the described events, neither is it clear who was the aggressor, nor is it revealed when the incidents occurred.

To sustain a divorce on grounds of indignities it must be shown that the misconduct of the offending spouse was conducted habitually and continued for such a period of time as to make the married life intolerable for the other spouse. *Preas* v. *Preas,* 188 Ark. 854, 67 S.W. 2d 1013 (1934). "Indignities may mean a number of things in various circumstances but in order to constitute the grounds for divorce they must be constantly and persistently pursued with the object and effect of rendering the situation of the opposing party intolerable." *Gibson* v. *Gibson,* 234 Ark. 954, 356 S.W. 2d 728 (1962); see *Welch* v. *Welch,* 254 Ark. 84, 491 S.W. 2d 598 (1973). In view of the recited requirement of the law, and in further view of the fact that the chancellor saw and heard the witnesses and with the right to judge their credibility, we are unable to say his finding was against the preponderance of the evidence.

Appellant does not argue that the property division or support money was improvident; at least they do not brief the questions. Be that as it may, we are unable to say that the awards made in those areas, along with an attorney's fee, were improper.

In addition to judgment for costs in favor of appellee, she is awarded an attorney's fee of $500 for appeal to this court. In fixing a rather modest fee we note that appellant has not accumulated any savings; his annual salary is around $9000; he has a son in a private school and is paying appellee $300 a month.

Affirmed.

HARRIS, C.J., not participating.