GREEN v. GREEN.

4-7991 197 S. W. 2d 294

Opinion delivered November 18, 1946.

J. G. Moore and E. A. Williams, for appellant.

Charley Eddy, for appellee.

ED F. McFADDIN, Justice. Appellee, John Green, filed suit against appellant, Bamey Green, for divorce and a settlement of property rights. A trial resulted in a decree of divorce and judgment in favor of appellee for $200 fixed as a lien on real estate. The facts necessary to an understanding of the issues here may be summarized as follows:

In 1943, John Green, when 68 years of age, was married to the appellant who was some years younger, and who was then embarking on her third matrimonial venture. The couple lived in Conway county; but Mr. Green worked at Camp Robinson, near Little Rock, six days a week, and was at home only on Sundays. Due to this circumstance he entrusted his wages to his wife; and she was the admitted bookkeeper and purchasing agent of the family. For the three years they lived together, his wages totalled in excess of $4,800. The Greens decided to buy two lots, and build a house. Mrs. Green took the title in her name—whether with her husband's consent or otherwise, is a disputed question. Mrs. Green testified:

"Q. He wanted you to buy the lots in your name and in his both?

"A. What is man's and woman's—that belongs to both of them. . . .

"Q. He turned everything over to you to manage?

"A.  Yes, sir.

"Q.  You did the managing?

"A.  Yes, sir."

And, again, she testified that Mr. Green said, as regards the purchase of the lots and the building of the home:

" 'I am glad you bought it. It will give us a home— maybe a poor home, but we will live in it.' "

A mortgage was executed to obtain additional funds to complete the house, and the mortgagee required a fire insurance policy, which was written in the joint names of the husband and the wife. Finally, the house and lots (all together worth about $1,500) were paid for, and the house was comfortably furnished.

Then—but not until then—the wife's attitude towards the husband changed, and finally became such that the husband was driven from home and forced to file this suit. Several witnesses testified that Mrs. Green, on various occasions, told the witnesses that she was going to live with Mr. Green until the house and furniture were paid for, and then she would not live with him any longer and would divorce him.

On this evidence, and other of a similar nature, the chancery court granted Mr. Green a judgment for $200, and fixed the same as a lien on the house and lots. The wife does not object, in this court, to the divorce decree; but appeals from that part of the decree concerning the judgment and lien. By cross appeal the husband asks a larger judgment, and also a part of the personal property.

The chancellor heard the cause on oral evidence, and had the opportunity to observe the demeanor of the witnesses; and with the evidence in sharp dispute—as it is—we cannot say that the chancellor's decision is against the preponderance of the evidence. This case, in its details, bears a striking similarity to the case of *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867. In the reported case the husband obtained a divorce; the wife had ob-

tained the husband's property in fraud, and equity granted relief. We there said:

"If it be true that she married and started in with the deliberate intention to simulate an affection she did not feel for a man much older than herself in order that she might acquire the title to his property and despoil him of it and drive him from the home he had purchased and conveyed to her in his utter reliance upon her affection, loyalty and faithfulness to him, or if she later formed such a design and pursued it with such intention to the consummation proved herein, we do not see why it was not such a fraud against his rights that equity should relieve against it."

A situation similar to that in the reported case appears to exist here: and the same relief should be granted. Mrs. Green invokes the rule of a presumptive gift, which rule (as stated in *Harbour* v. *Harbour, supra*) is:

" . . . that where the husband purchased and paid for lands, taking the deeds therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referrable to his affection for her and his duty to protect her against want, and it will be presumed to be a gift and, so far as he is concerned, becomes absolutely her property. *Wood* v. *Wood,* 100 Ark. 370, 140 S. W. 275; *Womack* v. *Womack,* 73 Ark. 281, 83 S. W. 937; *O'Hair* v. *O'Hair,* 76 Ark. 389, 88 S. W. 945."

But this presumption about the gift is not a conclusive presumption, and may be rebutted by evidence of facts antecedent to and contemporaneous with the conveyance, showing that the conveyance was not a gift. *Chambers* v. *Michael,* 71 Ark. 373, 74 S. W. 516; *Milner* v. *Freeman,* 20 Ark. 62; *Harbour* v. *Harbour, supra*. For a recent case see *Fine* v. *Fine,* 209 Ark. 754, 192 S. W. 2d 212. The rebuttable presumption of a gift was over-

come by the testimony in the case at bar, certainly to the extent of the $200 decreed by the chancery court in favor of the appellee; so we affirm the cause on direct appeal.

On the cross appeal of Mr. Green, we likewise affirm the case because of the insufficiency of the evidence to convince us that any amount in excess of $200 (as fixed by the chancery court) was other than a gift. See *Biddle* v. *Biddle,* 206 Ark. 623, 177 S. W. 2d 32.

Affirmed both on direct appeal and cross appeal.